IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

DEYONTAE CORNAIL STINSON,

                Plaintiff,

v.

RENNAE SCHUELER, ANGELA HODGE,
SALAMULLAH SYED, TERESA EAILR, and
DENISE VALERIUS,

                Defendants.

OPINION and ORDER

19-cv-379-jdp

---

Pro se plaintiff Deyontae Cornail Stinson, an inmate at Columbia Correctional Institution (CCI), sustained a serious injury to his right knee in February 2017. He alleges that health-care staff at CCI have failed to address his medical needs in the aftermath of that injury by failing to promptly schedule him for a needed surgery and by depriving him of ibuprofen to address his pain.

The court has granted Stinson leave to proceed in forma pauperis. Dkt. 4. I must now screen his complaint and dismiss any portion that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law cannot be sued for money damages. 28 U.S.C. §§ 1915 and 1915A. In doing so, I must accept his allegations as true, *see Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 463 (7th Cir. 2010), and construe the complaint generously, holding it to a less stringent standard than formal pleadings drafted by lawyers. *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011).

Stinson may have viable constitutional and state-law claims, but he has not explained how the defendants he named are specifically responsible for those violations. So I will dismiss his complaint and give him a chance to file an amended complaint.

ALLEGATIONS OF FACT

On February 18, 2017, Stinson was playing basketball at CCI when he severely injured his right knee. He was rushed to CCI's health service unit (HSU), where he was seen by a registered nurse (whose name he does not know). The nurse observed that Stinson's knee was swollen in an unnatural way. She sent Stinson back to his housing unit in a wheelchair with a bag of ice, but she did not provide him with an x-ray or pain medication. On February 20, 2017, Stinson was seen by another unknown nurse, who also sent him back to his housing unit without an x-ray.

On May 18, 2017, Stinson was seen by defendant Salamullah Syed, a doctor, who ordered an MRI. That MRI occurred on July 11, 2017. It revealed a "complex tear." Dkt. 1, at 3. Stinson says that he was told that a knee surgery had been scheduled for November 16, 2017, but that date came and went without Stinson receiving his surgery. Stinson filed a grievance about the delay in care on February 5, 2018. *See* Dkt. 1-1. The inmate complaint examiner recommended that Stinson's complaint be dismissed, noting that "[w]hile there was a period of delay . . . , care has been occurring and plans for continued care are in process. Noting that surgery is scheduled, recommendation is for dismissal." *Id.* at 1. Stinson ultimately received the promised surgery on March 15, 2018.

Stinson also alleges that he was deprived of ibuprofen for a several days in January 2018. Stinson was in segregation at the time and was experiencing considerable pain. He filed a grievance about the deprivation on February 8, 2019. *See* Dkt. 1-2. That grievance was affirmed after the inmate complaint examiner determined that "the medication should have been reissued through HSU after the [segregation] placement. Recommendation is to affirm

the complaint with copies to the Deputy Warden and [Health Service Managers] to review the process of reissuing medication for [Restrictive Housing] Unit Moves." Dkt. 1-2, at 1.

ANALYSIS

Stinson attempts to assert Eighth Amendment medical care claims and state-law medical malpractice claims. I understand his claims to arise out of two incidents related to his knee injury: (1) the delay in scheduling his surgery; and (2) the failure to provide him with pain medication while in segregation.

A. **Delay in scheduling Stinson's knee surgery**

Stinson contends that all five defendants violated the Eighth Amendment and Wisconsin law by failing to promptly schedule him for surgery once the extent of his injury became clear. The Eighth Amendment prohibits prison officials from acting with deliberate indifference toward prisoners' serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 103–104 (1976). To state a deliberate indifference claim, Stinson must allege that each defendant was aware of a serious medical need and consciously failed to take reasonable measures to help him. *Duckworth v. Ahmad*, 532 F.3d 676, 679 (7th Cir. 2008). A serious medical need is a condition that a doctor has recognized as needing treatment or one for which the necessity of treatment would be obvious to a lay person. *Johnson v. Snyder*, 444 F.3d 579, 584–85 (7th Cir. 2006). Delays in treatment may constitute deliberate indifference if they unnecessarily prolong the prisoner's pain. *Smith v. Knox Cty. Jail*, 666 F.3d 1037, 1040 (7th Cir. 2012).

I can infer from Stinson's allegations that his knee injury constituted a serious medical need for purposes of the Eighth Amendment. But I cannot tell from Stinson's allegations how these five defendants he names were responsible for the delay he experienced in getting the

surgery he needed. Stinson says that "health service request forms show the names of the defendants who were [primarily responding to his] medical needs" were defendants Angela Hodge (HSU assistant manager), Teresa Eailr (a registered nurse), and Denise Valerius (another registered nurse). Dkt. 1, at 4. But he doesn't explain what relief he asked for in his health service requests forms, so I cannot tell whether Hodge, Eailr, and Valerius were aware that Stinson needed surgery and failed to take reasonable measures to help him.

The same goes for defendants Schueler and Syed. Stinson does not make any specific allegations about Schueler, other than noting that she was the health service manager during the period at issue. But to be liable under the Eighth Amendment, a defendant must have personal involvement in the constitutional deprivation. *Hildebrandt v. Ill Dep't of Nat. Res.*, 347 F.3d 1014, 1036 (7th Cir. 2003). This means that an official must have participated in the alleged conduct or facilitated it. It is not enough to show that a particular defendant is the supervisor of someone else who committed a constitutional violation. *Burks v. Raemisch*, 555 F.3d 593–94 (7th Cir. 2009) ("Liability depends on each defendant's knowledge and actions, not on the knowledge or actions of persons they supervise."). As for the allegations about defendant Syed, Stinson says that he saw Syed on May 18, 2017, and that Syed ordered that an MRI be performed. But Stinson doesn't explain how, if at all, Syed was responsible for the delay in scheduling Stinson's surgery, or how his actions otherwise demonstrated a conscious disregard for Stinson's medical needs.

## B. Failure to provide pain medications

Stinson also alleges that he was deprived of ibuprofen for a several days in January 2018, while he was in segregation. But Stinson doesn't identify any defendant who was responsible for this deprivation.

So as currently pleaded, Stinson's delay-related allegations do not state Eighth Amendment claims against any of the defendants. And without Eighth Amendment claims, I will not exercise supplemental jurisdiction over any potential state-law medical malpractice claims. *See* 28 U.S.C. § 1367(c).

**C. Amending the complaint**

I will give Stinson a short deadline to file an amended complaint that explains how each of the defendant is responsible for the deprivations he alleges. He should draft his amended complaint as if he were telling a story to people who know nothing about his situation. Stinson should state (1) what acts he believes violated his rights; (2) what rights were violated; (3) the specific person who committed each of those acts; and (4) what relief he wants the court to provide. If Stinson does not know the identity of particular defendants, he may label them as John Doe No. 1, John Doe No. 2, and so on, and the court has procedures by which he may make discovery requests to identify those defendants. If Stinson does not provide an amended complaint by the deadline set below, I will dismiss the case for his failure to state a claim upon which relief may be granted, and assess him a "strike" under 28 U.S.C. § 1915(g).

**D. Motion for injunctive relief**

Stinson has also filed a motion for preliminary injunctive relief, Dkt. 7, which I will deny as moot. He may renew his motion when he files his amended complaint. But when he does so, he should be sure to follow this court's rules for motions seeking injunctive relief. I will attach a copy of those procedures to this order. To show that he is entitled to injunctive relief, he must file findings of fact explaining the events supporting the need for injunction. An injunction is a forward-looking remedy, so Stinson needs to explain why the facts as they exist right now warrant court intervention. It is not enough simply to summarize his allegations

about CCI's past delay in scheduling his surgery, because Stinson received his surgery on March 15, 2018. So if Stinson chooses to renew his motion for injunctive relief, he must provide findings of facts that explain specifically how his medical needs are *currently* not being met, and what specific relief would resolve these issues.

ORDER

IT IS ORDERED that:

1. Plaintiff Deyontae Cornail Stinson's complaint, Dkt. 1, is DISMISSED.

2. Plaintiff may have until November 18, 2019, to submit an amended complaint that complies with Federal Rule of Civil Procedure 8.

3. Plaintiff's motion for preliminary injunctive relief, Dkt. 7, is DENIED as moot. The clerk of court is directed to send plaintiff this court's procedures for filing motions for injunctive relief.

Entered October 28, 2019.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge