IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

DEYONTAE CORNAIL STINSON,

                      Plaintiff,

v.                                                   OPINION and ORDER

RENEE SCHUELER, SALAMULLAH SYED,                       19-cv-379-jdp
and TIM DETERS,

                      Defendants.

---

     Pro se plaintiff Deyontae Cornail Stinson is proceeding on Eighth Amendment and state law negligence claims against three Columbia Correctional Institution health care providers. Stinson says that defendants Tim Deters (privately-employed) and defendants Renee Schueler and Salam Syed (state-employed) failed to treat his knee injury properly. Before the court are defendants' motions for summary judgment. Dkt. 103 (Deters) and Dkt. 108 (Schueler and Syed). In considering defendants' motions, I have viewed the evidence in the light most favorable to Stinson. But Stinson has failed to submit evidence showing that defendants acted indifferently to his medical needs, so I will grant defendants' motions on his Stinson's Eighth Amendment claims. I will decline to exercise supplemental jurisdiction over Stinson's state law claims, so those will be dismissed without prejudice.

UNDISPUTED FACTS

     The following facts are undisputed unless otherwise noted.

**A. The parties and background**

     Plaintiff Deyontae Stinson was incarcerated at CCI at all times relevant to this case. All defendants worked at CCI: Salam Syed worked as a physician; Renee Schueler worked as the

health services manager; and Tim Deters was a privately-employed nurse who worked at the prison under contract.

On February 18, 2017, Stinson injured his right knee while playing basketball. He was evaluated at the health services unit (HSU) by defendant Nurse Deters. Stinson's knee was moderately swollen, but there were no other obvious deformities. It was a Saturday, and no doctors or x-ray services were available at the prison. Deters issued Stinson an ice bag, crutches, an ace bandage, and a 30-count card of ibuprofen. Deters told Stinson to rest and elevate his knee, use crutches to keep weight off of his right leg, restrict exercise, ice the leg several times a day, and apply the ace bandage to the knee for compression. Deters scheduled Stinson for a follow-up nursing appointment for Monday, February 20, and told Stinson to contact HSU if his condition worsened before then.

Stinson attended the follow-up appointment with a nurse on February 20. According to the nurse's notes, Stinson reported that his swelling had decreased significantly since Saturday and that he had been elevating and icing his leg, but that he was still struggling with pain. Defendant Dr. Syed was not at the prison that day, but he was contacted by telephone and approved an x-ray of Stinson's knee. The purpose of the x-ray was to rule out any fractures or dislocation. (Stinson denies that he received an x-ray in February 2017, but the x-ray results are in his medical record. Dkt. 107-1, at 7.)

The x-ray showed no fracture, dislocation, or other abnormalities with Stinson's knee. Syed concluded that Stinson likely had a typical sports injury, such as a torn meniscus, that could be treated conservatively with rest, ice, elevation, and ibuprofen. Syed did not refer Stinson to a specialist and did not order additional imaging, such as an MRI, because he wanted to see if conservative care would help first.

Over the next couple of months, Stinson continued to complain about knee pain. Stinson told HSU staff that his pain was unbearable. Stinson saw Deters in response to a health service request on April 5, 2017. Stinson told Deters that the pain and swelling in his right knee had been gradually improving, but that he still had pain. Deters renewed Stinson's ice order, noted that Stinson had ibuprofen available to him, and told Stinson to follow up with HSU if his condition did not continue to improve.

Stinson was seen for pain again on May 18, 2017. This time, he was seen by a nurse practitioner who ordered an MRI of his knee to. She also renewed Stinson's prescription for ibuprofen and ice. The MRI was performed on July 11, 2017, and showed a complex meniscus tear. Dr. Syed reviewed the MRI report on July 24, 2017, and directed that Stinson be scheduled for an appointment with Dr. Thomas Grossman, an orthopedic specialist, at Agnesian Orthopedics.

Stinson was seen by Dr. Grossman, the orthopedic specialist, on August 23, 2017. Grossman's notes from the visit were sent to the prison on August 28, 2017. The medical program assistant at the prison, who is not a defendant in this case, should have sent the notes to Dr. Syed right away, but she failed to do so. On November 14, 2017, Syed asked nursing staff to obtain Grossman's report because he had not seen it yet. Syed received and reviewed the report on November 16. Grossman's report stated that he had discussed elective knee surgery with Stinson, but had cautioned Stinson that the surgery had risks, including "bleeding, infection, damage to nerves and blood vessels, scar, swelling, stiffness, inability to relieve his complaints, and need for further interventions." Grossman also stated that the surgery came with "no guarantees." Stinson wanted the surgery, so Syed wrote an order to schedule Stinson

3

for a follow-up appointment with Grossman. Stinson was then scheduled for surgery. Syed also sent a referral to the special needs committee for Stinson to receive soft shoes.

Stinson was assigned to the segregation unit for the first week of February 2018. During that time, there was a delay in his receiving ibuprofen. On February 2, Stinson complained to health services that he had been denied proper medical care for his knee. He addressed his complaint to defendant Schueler, the health services manager, but a nurse responded to the complaint, not Schueler. Stinson then submitted an inmate complaint about being denied adequate medical care. The inmate complaint examiner contacted Schueler, who reviewed Stinson's chart. Schueler responded to the inmate complaint examiner that there had been an error in August 2017, when the medical assistant failed to promptly forward the orthopedist's report for Dr. Syed's review. Since then, however, Stinson had received care for his knee and was scheduled to undergo surgery.

Stinson underwent knee surgery on March 16, 2018. Since the surgery, Stinson has continued to complain of knee pain.

ANALYSIS

Stinson was granted leave to proceed on the following claims:

1) Defendant Deters and Syed violated his rights under the Eighth Amendment and Wisconsin medical malpractice law by failing to provide proper medical treatment for his knee injury; and

2) Defendant Schueler acted negligently by failing to monitor Stinson's care plan, thereby contributing to a months-long delay in his receiving knee surgery.

Defendants have moved for summary judgment, contending that Stinson cannot prove that they acted with deliberate indifference or negligence in treating him.

A. **Eighth Amendment**

The Eighth Amendment's prohibition on cruel and unusual punishment prohibits prison officials from acting with "deliberate indifference" to prisoners' serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976); *Pyles v. Fahim*, 771 F.3d 403, 408 (7th Cir. 2014). To prevail on a claim under the Eighth Amendment a prisoner must show that (1) he has an objectively serious medical condition; and (2) defendants acted with deliberate indifference to that condition. *Chatham v. Davis*, 839 F.3d 679, 684 (7th Cir. 2016); *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011). The first element, an objectively serious medical condition, is one that a doctor recognizes as needing treatment or one for which the necessity of treatment would be obvious to a lay person. *Pyles*, 771 F.3d at 412. Defendants accept that Stinson's knee injury was a serious medical condition.

The second element, an official's deliberate indifference, relates to the official's subjective state of mind. *Perez v. Fenoglio*, 792 F.3d 768, 776–77 (7th Cir. 2015); *Arnett*, 658 F.3d at 750. A plaintiff must show that the defendant knew of and disregarded a substantial risk of harm. *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016); *Gevas v. McLaughlin*, 798 F.3d 475, 480 (7th Cir. 2015). In cases, such as this one, in which a prisoner alleges that he received some treatment for his medical condition, but that the treatment was inadequate, the relevant question is whether the medical provider's actions were "such a substantial departure from accepted professional judgment, practice, or standard, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Estate of Cole by Pardue v. Fromm*, 94 F.3d 254, 261-62 (7th Cir. 1996).

A medical provider violates the Eighth Amendment if the provider prescribes a course of treatment without exercising medical judgment or prescribes treatment that the provider

5

knows will be ineffective. *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662–63 (7th Cir. 2016). But it is not enough for a plaintiff to allege that he disagrees with a defendant's conclusions about the appropriate treatment, *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006), that other medical providers reached a different conclusion about what treatment to provide the plaintiff, *Pyles*, 771 F.3d at 409, or even that defendants could have provided better treatment. *Lee v. Young*, 533 F.3d 505, 511-12 (7th Cir. 2008). Rather, the plaintiff must show that any medical judgment by defendants was "so significant a departure from accepted professional standards or practices that it calls into question whether the doctor actually was exercising his professional judgment." *Pyles*, 771 F.3d at 409.

Stinson contends that Nurse Deters and Dr. Syed acted with deliberate indifference to his knee injury. But the evidence does not support Stinson's claim. The undisputed evidence shows that Deters evaluated Stinson's knee and provided the care that he thought was appropriate under the circumstances. Stinson argues that Deters should have contacted an advanced care provided immediately and should have requested approval for an x-ray or other imaging. But both Deters and Syed have submitted evidence showing that it is reasonable to provide conservative treatment to a patient who has suffered a sports injury and has no signs of a fracture or dislocation. Stinson's knee was swollen, but was not obviously broken or dislocated, so Deters provided an ice bag, crutches, an ace bandage, and pain medication. Deters advised Stinson on how to care for his injury, scheduled him for a follow-up appointment, and directed Stinson to contact HSU if his condition worsened. No reasonable jury could conclude that Deters showed indifference to Stinson's medical needs.

Dr. Syed also exercised medical judgment in treating Stinson's knee injury. When Stinson reported continued pain several days after his injury, Syed approved an x-ray to rule

6

out a dislocation or fracture. The x-ray showed normal bone structure, so Syed thought it was appropriate for Stinson to continue using conservative care to treat his injury. After a later MRI showed a torn meniscus, Syed referred Stinson to an orthopedic specialist, approved elective surgery, requested special shoes, and ordered additional pain medication for Stinson. Stinson has not shown that any of these treatment decisions was "blatantly inappropriate" or "so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment." *Norfleet*, 439 F.3d at 396.

Nonetheless, Stinson argues that Syed acted with deliberate indifference to Stinson's knee injury on at least three occasions. First, he argues that Syed should have ordered an MRI sooner. But Syed has adequately explained why he thought it was appropriate to use conservative measures first. According to Syed, most sports injuries, including meniscus tears, can be treated without surgery, by using rest, ice, compression, and elevation. And Stinson's disagreement with Syed's medical opinion is not sufficient to sustain an Eighth Amendment claim. *See Holloway v. Delaware Cnty. Sheriff*, 700 F.3d 1063, 1074 (7th Cir. 2012) (prison doctor "is free to make his own, independent medical determination as to the necessity of certain treatments or medications, so long as the determination is based on the physician's professional judgment and does not go against accepted professional standards"). Although Stinson may have wanted different treatment, "an inmate is not entitled to demand specific care, and medical professionals may choose from a range of acceptable courses based on prevailing standards in the field." *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019) (internal quotation marks omitted).

Second, Stinson argues that Syed ignored the orthopedist's recommendations about surgery. But the unrefuted evidence shows that the medical assistant, not Syed, was responsible

7

for the delay in Syed receiving the orthopedist's notes. In addition, it is undisputed that the surgery was an elective procedure, and that reasonable medical providers could disagree about whether the surgery was necessary under the circumstances.

Third, Stinson says that Syed failed to ensure that Stinson had access to pain medication while he was in segregation. But Stinson has submitted no evidence showing that Syed was responsible for delivering medication to Stinson or that he caused any delay in Stinson receiving medication. *See Burton v. Downey*, 805 F.3d 776, 785 (7th Cir. 2015) ("[W]ithout evidence that defendants acted with the requisite bad intent in delaying the dispensation of his medication, Burton's allegations are insufficient to sustain a deliberate indifference claim.").

In sum, Stinson has failed to show that defendants Deters or Syed acted with deliberate indifferent to his serious medical needs. These defendants are entitled to summary judgment on Stinson's Eighth Amendment claims against them.

**B. State law claims**

Stinson was also granted leave to proceed on state law negligence claims against Deters, Syed, and Renee Schueler. The general rule is that federal courts should relinquish jurisdiction over state law claims if all federal claims are resolved before trial. 28 U.S.C. § 1367(c)(3); *Jauquet v. Green Bay Area Cath. Educ., Inc.*, 996 F.3d 802, 812 (7th Cir. 2021) Because I am granting summary judgment to defendants on all of the federal claims, I will decline to exercise subject matter jurisdiction over Stinson's state law claims. Stinson may refile those claims in state court, subject to the applicable Wisconsin statute of limitations.

ORDER

IT IS ORDERED that:

1. Defendant Tim Deters's motion for summary judgment, Dkt. 103, is GRANTED with respect to Stinson's Eighth Amendment claims.

2. Defendant Renee Schueler and Salam Syed's motion for summary judgment, Dkt. 108, is GRANTED with respect to Stinson's Eighth Amendment claims.

3. Plaintiff's state law claims are DISMISSED without prejudice under 28 U.S.C. § 1367(c)(3).

4. The clerk of court is directed to enter judgment accordingly and close this case.

Entered August 23, 2021.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge